UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN HOLLAND,<br><br>    Plaintiff,<br><br>    v.<br><br>PROTECTION ONE ALARM<br>MONITORING, INC., a Delaware<br>corporation,<br><br>    Defendant. | Case No. C15-259 RSM<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND DENYING PLAINTIFF'S MOTION<br>FOR PARTIAL SUMMARY JUDGMENT |

## I.      INTRODUCTION

This matter comes before the Court on Defendant Protection One Alarm Monitoring, Inc. ("Protection One")'s Motion for Summary Judgment, Dkt. #29, and Plaintiff John Holland's Motion for Partial Summary Judgment, Dkt. #34. Protection One moves the Court to dismiss all of Mr. Holland's claims. Dkt #29. Mr. Holland moves the Court for partial summary judgment, seeking determinations that he had a disability and that he engaged in protected activity, and for dismissal of Protection One's affirmative defenses. Dkt. #34. The Court has determined that oral argument is unnecessary. For the reasons set forth below, the Court GRANTS Defendant's Motion and DENIES Plaintiff's Motion as moot.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

## II.    BACKGROUND

Mr. Holland filed suit in February 2015 against Protection One alleging violations of the Family Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), the Washington Law Against Discrimination ("WLAD"), and violation of his right of privacy under RCW Ch. 9.73. *See* Dkt. #1.  Mr. Holland alleges that Protection One discriminated and retaliated against him after he disclosed a health condition and requested intermittent FMLA leave on May 7, 2013.  *Id.*  Protection One issued a "termination notice" to Mr. Holland on June 4, 2013, citing, *inter alia*, "intimidating leadership," and "yelling, profanity and degrading comments regarding employees."  *Id.* at 16.  This termination notice also references an audio recording of Mr. Holland made during a meeting, which Mr. Holland alleges was illegal.  *Id.*

### A.  Employee Complaints against Mr. Holland, 2010-2012

Mr. Holland was initially hired by Protection One as a Commercial Operations Supervisor in its Seattle branch in 2007.  Dkt. #31 at 1.  Mr. Holland was promoted to the position of General Manager of the Seattle branch on or about November 23, 2009.  *Id.* at 2.

In December 2010, Protection One's CEO received a letter from an employee alleging that Mr. Holland had created a "hostile work environment," and that he "screams, yells, cusses and makes a person feel 1 inch tall."  Dkt. #31-1 at 1.  Betsy Scott, Vice President of Human Resources at Protection One, investigated but took no corrective action against Mr. Holland. Dkt. #31 at 2.  In February 2011, Protection One received another complaint that Mr. Holland had been verbally abusive to an employee.  Dkt. #31 at 2; Dkt. #31-2.  Ms. Scott investigated and found that Mr. Holland had inappropriately yelled at an employee for forgetting her key card and knocking on the door to the office.  Dkt. #31 at 2. Ms. Scott spoke with both the employee and Mr. Holland but took no other corrective action against Mr. Holland.  *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

In late September 2012, Ms. Scott received a telephone call from Dorie Ross, a former Protection One employee who had recently resigned. *Id*. at 2-3; Dkt. #31-3. According to notes from that call, Ms. Ross reported that Mr. Holland was "volatile and very difficult to work for." *Id*. She stated that employees were scared of Mr. Holland, that he "drops f-bombs on a daily basis," and that he was "[d]emeaning during conversations." *Id*. Ms. Scott investigated this complaint by speaking with employees in the Seattle branch and found the complaints to be substantiated. *Id*. Specifically addressing this complaint, Mr. Holland admits through briefing that he raised his voice and "dropped 'F-bombs' in managers meetings… on occasion." Dkt. #34 at 5. In October 2012, after completing her investigation, Ms. Scott counseled and coached Mr. Holland regarding his behavior and provided him with suggestions on how to control his anger and act professionally. Dkt. #31 at 3. Both Mr. Holland's immediate supervisor and the CEO of Protection One also spoke to him about his unprofessional behavior and his need to improve it. *Id.*; Dkt. #31-12. No other corrective action was taken against Mr. Holland.

On March 14, 2013, Mr. Holland received an "Employee Performance Evaluation," receiving an "ME" (meeting expectations) in the categories of "Leadership," "Managing Conflict," and "Communication," with a written comment stating "John is a good leader who is passionate and wants to be number one and works hand in hand with his team." Dkt. #1 at 13-15. This performance evaluation does not mention the previous complaints or counseling efforts.

**B. Emergency Room Visit**

Mr. Holland has suffered from hypertension for some time. Dkt. #36 at 4. On April 23, 2013, the condition became worse, Mr. Holland went to see his doctor, and was sent to the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

emergency room for treatment.  *Id.* at 4-5.  Mr. Holland was told that his exacerbated hypertension condition was due to work-related stress.  *Id.* at 5.  His medical records indicate that a subsequent "cardiac workup" was "negative," except for high blood pressure.  Dkt. #30-3 at 2.

Shortly thereafter, Mr. Holland called his supervisor, Ed Rickard, and informed him about this incident and that he would need to take the next day off to reduce stress based on his doctor's recommendation.  Dkt. #36 at 5.  Mr. Holland did not explicitly mention hypertension.  Mr. Holland emailed Mr. Rickard the following day, stating:

> Would you mind if I work from home today.  I have a follow up appointment this morning with my Dr.  The ER doctor suggested that I take some time off and as you know I cannot afford to do that right now with everything that we have going on and believe that I can stay on top of everything without taking time off.

Dkt. #39 at 7.  This email did not explicitly mention hypertension.

### C.  Mr. Holland's Last Month of Employment

Approximately one week later, on May 1, 2013, Mr. Holland sent an email to Protection One's Human Resources department, asking for "necessary information for FML," and later clarified that he would be seeking "intermittent" leave.  Dkt. #31 at 5; Dkt. #31-10.  Protection One provided Mr. Holland with a packet of information which included an application for intermittent FMLA leave.  *Id*.  The introductory letter informed Mr. Holland that the application must be returned within 15 days of the date of the letter.  *Id*.  Mr. Holland concedes that he received, but never returned, the FMLA application to Protection One.  Dkt. #30-1 ("Holland Dep.") at 99:10 – 100:16.  On May 1, 2013, Mr. Holland also sent an email to his supervisor as follows:

> I want to request PTO from May 10th - May 19th. It works out to be six days. Going to spend a few days in Las Vegas and Phoenix visiting Crystal and friends.  I will ensure that everything in the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

> Branch is set before leaving Friday Morning the 10th. Of course, you and I both know that Jennifer runs the Branch anyway, even when I am here.

Dkt. #30-1 at 40. On May 9, 2013, Mr. Holland had a conversation with Ms. Scott discussing this "time off" request. Holland Dep. at 91:23-93:25. Ms. Scott informed Mr. Holland that his time off request had been approved. *Id.* When asked if he had made a request for medical leave to Ms. Scott, Mr. Holland stated that he "informed her that I was taking time off due to the recommendation from the doctor… and to take steps to reduce stress." *Id.* Mr. Holland again did not explicitly mention hypertension. Whether or not the leave was officially approved at the time, Mr. Holland does not dispute that he took the leave and that no one at Protection One ever said anything negative about him taking this time off. Holland Dep. at 109:14 – 110:10. Mr. Holland reiterated in deposition that he never used the term "medical leave" to refer to this trip; rather he referred to it as "time off at the recommendation of… my doctor." Holland Dep. at 96:12-20.

On May 14, 2013, Protection One received two complaints about Mr. Holland's conduct through its third party report service, Ethics Point. Dkt. #31 at 3; Dkt. #31-4; Dkt. #31-5. The complaints reported conduct that was similar to the report received in late September 2012. *See id.* Again, Ms. Scott investigated by interviewing employees. *Id.* Employees again reported that Mr. Holland had engaged in numerous instances of unprofessional behavior, including making an inappropriate advance towards a female potential customer, referring to Protection One's competitors as "child molesters" who watch "gay midget porn" during a meeting with third parties, as well as continued swearing and yelling. *Id.*; Dkt. #31-6.

Plaintiff returned to work on Monday, May 20, 2013. Holland Dep. at 99:22-23. He visited his doctor that day and had him complete the FMLA application. *Id.* at 99:15 – 100:16;

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

Dkt. #30-1 at 34-37.  Dr. Miller's records indicate that Mr. Holland had "FMLA paperwork for stress. Has been off work for a few days and feels better after trip to AZ, saw family."  Dkt. #30-3 at 1.  Although the FMLA application was completed on May 20, 2013, Mr. Holland did not return the application to Protection One that day, or any time over the next two weeks prior to his termination of employment.  Holland Dep. at 100:6-13.

Notably, Mr. Holland's doctor indicated in the FMLA form that Mr. Holland was not unable to perform any of his job functions due to his condition, that he did not need any further medical leave, intermittent or otherwise, that he would not need to attend follow-up treatment appointments or work part-time or on a reduced schedule, and that he would not suffer any episodic flare-ups that would impact his job functions.  Holland Dep. at 100:18-23; Dkt. #30-1 at 34-37.  Protection One first saw the completed FMLA application approximately two months after Mr. Holland's employment had been terminated.  Dkt. #31 at 5.

On May 27, 2013, after concluding her investigation, Ms. Scott sent an email to the Regional VP who supervises Mr. Holland, as well as his superior and the CEO, summarizing the substantiated complaints against Mr. Holland.  Dkt. #31 at 3-4. In this email, Ms. Scott stated:

> We discussed this type of behavior with [Mr. Holland] before and he is just not making the permanent adjustments he needs to and the employees have lost all respect for him, even his most loyal employees.  At this point his ability to lead the team is damaged. I have discussed this with Paul and Ed and we are all in agreement that it is time to move John out of the organization.

Dkt. #31-7 at 1.[1]  Ultimately, the decision to terminate Mr. Holland's employment was made by the CEO, Timothy Whall.  Dkt. #31 at 4.  Mr. Whall made the decision to terminate

---

[1] The Court notes that Ms. Scott in the same email also recommended the termination of another General Manager in a different office location for similar abusive behavior, and a final written warning to a lower level employee for outbursts and taking his frustration out on his colleagues.  Dkt. #31-7.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

Plaintiff's employment on May 31, 2013, during a telephone call with Ms. Scott. *Id.* Ms. Scott states that, although she was aware that Mr. Holland was going to request an FMLA application during her investigation, she did not share this with Mr. Whall "or anyone else with a role in the decision to terminate plaintiff's employment." Dkt. #31 at 5.

The next day, Ms. Scott received an email from an individual going by "Jack Frost," with an audio recording attachment. *Id.* The recording contained audio of Mr. Holland yelling, using profanity, and referring to employees in the corporate office of Protection One in an unprofessional manner during a meeting. *Id.* Mr. Holland did not give consent to be recorded. Dkt. #36 at 8. Protection One states that the recording was not made with its knowledge or authorization. Dkt. #31 at 4. After listening to the recording, Ms. Scott determined that Mr. Holland must be removed from the branch immediately to prevent any further verbal abuse of Protection One's employees. *Id.*

On June 4, 2013, Mr. Holland received a termination notice in a meeting with his supervisor William "Ed" Rickard. Dkt. #31 at 5; Dkt. #1 at 16. The termination notice states that Mr. Holland was being terminated as a result of his "continued unacceptable behavior," specifically "yelling, profanity and degrading comments regarding employees of the branch other departments, which created an unacceptable work environment." Dkt. #1 at 16. The notice specifically mentions that Mr. Holland "has received multiple complaints… over the past couple of years." *Id.*

Mr. Holland states, and the record indicates, that he did not receive a formal written warning, or a Performance Improvement Plan ("PIP") before termination. Written warnings are discussed in Protection One's "Performance Improvement Plan Employee Guide." Dkt. #39 at 14-16. This guide contemplates a first, second, and final written warnings, suspension,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

and a "final step" of discharge from employment.  *Id.*  Mr. Holland states that "Protection One made clear that this was a process it expected to be followed in all cases going forward," and that "[t]hese same formal warnings and PIP corrective action tools were… used with Branch Managers…"  Dkt. #34 at 2 (citing Dkt. #36 at 1-2; Dkt. #35 at 16-17, 33-34).  However, the guide also states "the company reserves the right, but is not required, to follow a progressive corrective action plan."  Dkt. #39 at 14.  The guide states "for violation of any of its rules or failure to perform to expectations, and depending upon the severity and frequency of the misconduct... Protection One may implement any of the following corrective actions.... The nature and severity of the offense/violation and the work record of the employee are critical elements in the decision making process."  *Id.*  The guide states "[t]he company need not resort to a progressive corrective action, but may take whatever action it deems necessary to address the issue at hand."  *Id.*  This is in accord with the Employee Handbook.  *See* Dkt. #31-11 at 9 ("this policy does not require 'progressive discipline.")

### III.   DISCUSSION

**A.  Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at 248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

**B. FMLA Claim**

Mr. Holland alleges that Protection One violated the Family Medical Leave Act in terminating his employment "for discriminatory and retaliatory purposes." Dkt. #1 at 5.

There are at least three categories of FMLA claims. *Bachelder v. America West. Airlines, Inc.*, 259 F.3d 1112, 1124-25 (9th Cir. 2001). One category, referred to as "interference" claims, covers claims that an employer has "interfere[d] with, restrain[ed], or den[ied] the exercise of or the attempt to exercise" any right the FMLA provides. 29 U.S.C. § 2615(a)(1); *Bachelder*, 259 F.3d at 1124. The other categories cover retaliation and discrimination. One aims at employers who discharge or "discriminat[e] against any individual for opposing any practice made unlawful by" the FMLA. *Bachelder*, 259 F.3d at 1124 (quoting 29 U.S.C. § 2615(a)(2)). The other aims at employers who "discriminat[e] against any individual for instituting or participating in FMLA proceedings or inquiries." *Id.* at 1124 (citing 29 U.S.C. § 2615(b)).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 9

In *Shields v. BCI Coca-Cola Bottling Co. of Los Angeles*, No. C04-928JLR, 2005 WL 2045887, *6 (W.D. Wash. Aug. 25, 2005), the Court considered a similar fact pattern as here. Ms. Shields claimed that her employer terminated her in part because she had requested additional FMLA paperwork, presumably to request FMLA leave.  *Shields,* 2005 WL 2045887 at *6.  The Court in that case concluded that Ms. Shields' claim fell within the "interference" category of FMLA claims.  *Id.*  There is no question of fact that Mr. Holland did not actually submit his FMLA application, that Protection One was not given the opportunity to refuse his non-request for FMLA, and that Mr. Holland did not voice opposition to Protection's One's non-refusal to offer FMLA.  The Court thus finds that, as in *Shields*, the Plaintiff is alleging an interference claim.[2]  Mr. Holland's FMLA interference claim is not subject to the traditional *McDonnell Douglas* burden shifting analysis, but instead requires only that he prove that seeking FMLA leave was "a negative factor" in his employer's termination decision.  *Id.* (citing *Bachelder*, 259 F.3d at 1125).[3]

In this case, the record shows Ms. Scott recommended Mr. Holland's termination to Protection One's CEO on the basis of Mr. Holland's behavior in the workplace, including the

---

[2] The Court notes that Mr. Holland argues that he is claiming FMLA retaliation, and that the proper test is "showing that (1) the employee engaged in a protected activity under this statute; (2) the employee was adversely affected by an employment decision; and (3) the protected activity and the adverse employment action were causally connected," citing out-of-circuit case law.  Dkt. #38 at 11 (citing *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161 (D.C. Cir. 2015)) (internal quotation marks omitted).  Even if the Court were to adopt this test, the Court finds that its conclusion would be no different, because no reasonable juror could find a causal connection between Mr. Holland's requests for FMLA and his termination, for the reasons stated *infra*.

[3] The Court notes that Ninth Circuit case law subsequent to *Bachelder* has applied a five-part test for FMLA interference claims involving the denial of FMLA benefits.  *See Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (An employee must establish that "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled.").  In *Sanders*, the Ninth Circuit stated that "the employer's intent is irrelevant to a determination of liability" in interference claims, citing *inter alia*, *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 332 (1st Cir. 2005) ("[E]mployer motive plays no role in a claim for substantive denial of benefits."); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960, (10th Cir. 2002) ("If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of this right is a violation regardless of the employer's intent."). However, this line of cases appears inapplicable to a fact pattern where the employer terminated the employee prior to (or instead of) deciding whether to grant an FMLA request—it is not possible for such an employee to prove his employer "denied him FMLA benefits to which he was entitled" without discussing the motive for the termination.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT  - 10

use of profanity.  *See* Dkt. #31-7 at 1.  Mr. Holland does not deny that he engaged in this type of behavior.  Mr. Holland offers no direct evidence that a request for FMLA leave played a role in the decision to terminate his employment.  Instead, Mr. Holland points to the circumstantial evidence of timing, the fact that "similarly situated managers without health issues were treated by following the progressive discipline policy," and Protection One's "failure to follow its own investigative [protocol]."  *See* Dkt. #38 at 12.[4]  Mr. Holland elaborates on this last allegation, stating that Ms. Scott failed to "follow her own practice and procedure which is to interview the subject of an investigation and allow him to provide information to refute or otherwise explain the alleged circumstances."  Dkt. #38 at 16.

The Court first addresses the timing of Plaintiff's termination.  The record demonstrates that Mr. Holland's termination occurred almost directly after Protection One received reports of inappropriate workplace behavior; even in the light most favorable to Mr. Holland, no reasonable jury could find that the timing alone indicated that Mr. Holland's notice of an intent to take leave and request for an application for FMLA played a negative factor in his termination.  Turning to the claim that "similarly situated managers without health issues were treated by following the progressive discipline policy," the Court finds this irrelevant because there is no genuine issue of fact that Protection One's progressive discipline policy was followed in this case since the policy as written provides Protection One with the flexibility to directly terminate an employee for egregious behavior, or to deviate from the policy at will.  Dkt. #39 at 14-16.  Finally, no reasonable jury could find that Protection One's failure to interview Mr. Holland after receiving complaints in May 2013 constituted evidence that Mr.

---

[4] Mr. Holland claims via declaration that he spoke with CEO Tim Whall about the complaints of profanity during an October 15, 2012, visit, and that Mr. Whall conveyed that he understood why Mr. Holland was using profanity and stated "[y]ou are one of my best managers, a top performer in the company, and you need to keep doing what you're doing."  Dkt. #36 at 3.  Plaintiff acknowledges that Mr. Whall has no recollection of this discussion.  Dkt. #34 at 5 n.3.  Even if Mr. Whall said these words, it does not call into question the motivation for Protection One's *subsequent* decision to terminate Mr. Holland after *subsequent* and more severe inappropriate behavior.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

Holland's FMLA requests played a negative factor in his termination, because such a course of action was reasonable given the circumstances—Protection One had previously met with Mr. Holland to investigate similar complaints, and the new complaints had merit based on the evidence before Ms. Scott.[5]  Because there is no evidence that a reasonable jury could rely on to find that a request for FMLA leave played a negative factor in Mr. Holland's termination, the Court finds that this claim is properly dismissed on summary judgment.

### C.  ADA and WLAD Claims

Mr. Holland alleges that Protection One violated the ADA and WLAD by terminating his employment "based upon his disability or perceived disability, failing to provide accommodations and retaliating against plaintiff."  Dkt. #1 at 5-6.

*Discrimination Claim*

In evaluating claims under both the ADA and WLAD, Washington courts apply the burden shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bacon, Jr. v. T-Mobile USA, Inc.*, No. C09-5608RJB, 2010 WL 3340517, at *6 (W.D. Wash. Aug. 23, 2010) (collecting cases).  Under this scheme, plaintiff must first establish a *prima facie* case of discrimination on account of a disability.  *Id*.  The burden then shifts to the employer "to provide a non-discriminatory reason for that discharge which disclaims any reliance on the employee's disability in having taken the employment action."  *Id*. (citations omitted).  If the employer does so, then plaintiff bears the burden of showing that the employer's reason for termination was pretextual.  *Id*.  This means that plaintiff must establish that the "proffered reason for the employment decision is not worthy of belief."  *Kuyper v. State*, 79 Wash. App. 732, 738, 904 P.2d 793 (1995).

---

[5] The Court notes that Mr. Holland does not dispute that he said the things he is accused of saying.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 12

In order to establish a *prima facie* case under the ADA, Mr. Holland must establish that: (1) he has a disability; (2) he is a qualified individual with a disability; and (3) that he was discriminated against because of that disability.  *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 988 (9th Cir. 2008).  A "disability" is defined as a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102. The term "substantially limits" is defined in 29 C.F.R § 1630.2(j), which lists three factors to consider in determining whether an individual is substantially limited in a major life activity: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Under Washington law, "[t]he elements of a *prima facie* case of disparate treatment disability discrimination are that the employee was: [1] disabled, [2] subject to an adverse employment action, [3] doing satisfactory work, and [4] discharged under circumstances that raise a reasonable inference of unlawful discrimination." *Callahan v. Walla Walla Hous. Auth.*, 126 Wn. App. 812, 819–20, 110 P.3d 782 (2005).  An employee's failure to provide notice of his disability to his employer may prevent him from pursuing a claim for disability discrimination under the WLAD.  *See Hume v. American Disposal Co.*, 124 Wn.2d 656, 670-672 (1994) (discussing notice in the context of a failure to accommodate claim).

Protection One argues that Mr. Holland did not have a disability as defined under the ADA, because Mr. Holland has conceded that his hypertension did not interfere with any major life activities in May or June of 2013.  Dkt. #29 at 18 (citing Holland Dep. at 113:12-14).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 13

Protection One argues that Mr. Holland's condition did not interfere with Mr. Holland's ability to work, as he had worked after being diagnosed with hypertension in 2010, and only took off nine days from work after the ER visit. *Id.* at 18-19. The Court also notes that Mr. Holland worked from home immediately after his ER visit, Dkt. #39 at 7, and that Mr. Holland's doctor at one point indicated that Mr. Holland's condition would not interfere with work. Dkt. #30-1 at 34-37. Protection One also points out that Mr. Holland's hypertension did not prevent him from obtaining other employment after he was terminated, which he started July 31, 2013, nor did it interfere in any way with that employment by his own admission. Dkt. #29 at 19 (citing Holland Dep. at 138:13-20, 157:13-22).[6]

In Response to this Motion, Mr. Holland argues that his physician, Dr. Warren Miller, concluded on May 20, 2013, that Mr. Holland "is unable to work or perform other regular daily activities for more than three consecutive, full calendar days and needs treatment" and that Mr. Holland's time away from work was medically necessary. Dkt. #38 at 5-6 (citing Dkt. #30-1 at 35). Mr. Holland also argues that:

> Washington law defines "Disability" more broadly than the ADA describing it as "the presence of a sensory, mental, or physical impairment that: (i) is medically cognizable or diagnosable; or (ii) exists as a record or history; or (iii) is perceived to exist whether or not it exists in fact." RCW 49.60.040(7)(a). Moreover, "[a] disability exists whether it is temporary or permanent, common or uncommon, mitigated or unmitigated, or whether or not it limits the ability to work generally or work at a particular job or whether or not it limits any other activity within the scope of this chapter." *Id*. at 7(b).

Dkt. #38 at 10.

---

[6] Protection One also argues that "Even if plaintiff could create an issue of fact as to whether he is disabled, he cannot establish the remainder of his prima face case. Plaintiff's only evidence that his termination was related to his alleged disability is 'coincidence.'" Dkt. #29 at 19.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 14

On Reply, Protection One argues that nothing in the cited record from Dr. Miller identifies any major life activity that was substantially impaired by Mr. Holland's hypertension, and that "[w]hen a plaintiff relies on work as the 'major life activity' limited by a disability, he must establish that he was 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" Dkt. #41 at 4 (citing 29 C.F.R. § 1630.2(j)(3)(i)). Protection One also argues that it was never given notice of Mr. Holland's disability—hypertension—before termination; Mr. Holland only informed his employer that he needed time off to deal with stress, and requested but did not submit an FMLA application. *Id.* at 4-6.

On these facts, the Court concludes that Mr. Holland's ADA claim must fail because he does not meet the disability definition. The Court bases this conclusion on Mr. Holland's own testimony that the condition did not affect life activities, his medical records indicating that Mr. Holland's condition would not interfere with work, and the fact that he repeatedly worked through his condition. Mr. Holland presents insufficient evidence for a reasonable jury to conclude that his hypertension affected his work. The Court also concludes that Mr. Holland's ADA and WLAD claims must fail because no reasonable jury could find that Mr. Holland was terminated because of his alleged disability. The record shows Protection One was not informed as to the nature of his medical condition, *i.e.* hypertension, prior to termination. Instead, Mr. Holland has repeatedly indicated that he only informed his employer that he needed time off to deal with stress at the direction of his doctor. Such statements do not put an employer on notice that an employee has a sensory, mental, or physical impairment. Protection One's well-documented motivation for termination, discussed *supra*, had nothing to do with Mr. Holland's medical condition or even his taking time off.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Failure to Accommodate Claim*

To establish a *prima facie* case for failure to accommodate under the ADA, Mr. Holland must show that "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability."   *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (citing *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003)); *see also* 42 U.S.C. §§ 12112(a), (b)(5)(A) (requiring reasonable accommodation).

Under Washington law, to establish a *prima facie* case for a reasonable accommodation claim, a plaintiff must show that "(1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality."   *Kries v. WA-SPOK Primary Care, LLC*, 2015 Wash. App. LEXIS 2190, *57 (Wash. Ct. App. Sept. 10, 2015) (citing *Davis v. Microsoft Corp.*, 149 Wn.2d at 532 (2003); *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 192-93, 23 P.3d 440 (2001), overruled on other grounds by *McClarty v. Totem Electric*, 157 Wn.2d 214, 137 P.3d 844 (2006)).

Because the Court has already found that Mr. Holland did not have a disability that substantially limited a major life activity, including work, and that he failed to give his employer notice of such a disability before termination, Mr. Holland cannot make a *prima facie*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 16

1    case for failure to accommodate under the ADA or the WLAD.   These claims are properly

2    dismissed on summary judgment.

3    **D.  RCW 9.73.060 Privacy Claim**

4

5        Mr. Holland claims that Protection One violated his right to privacy under state law.

6    Dkt. #1 at 6.  RCW 9.73.030(1)(b) makes it unlawful to record a "private conversation," without

7    "first obtaining the consent of all the persons engaged in the conversation."   The term "private

8    conversation" is not defined in the statute.   RCW 9.73.060 states that "[a]ny person who,

9    directly or by means of a detective agency or any other agent, violates the provisions of this

10   chapter shall be subject to legal action for damages, to be brought by any other person claiming

11   that a violation of this statute has injured his or her business, his or her person, or his or her

12   reputation."

13

14        Protection One argues that Mr. Holland's claim is based solely on the audio recording it

15   received from "Jack Frost" on June 1, 2013.  Dkt. #29 at 22.   Protection One argues that the

16   recording is not of a "private conversation" within the meaning of the statute, citing to Mr.

17   Holland's deposition.  Mr. Holland admits that the recording was made during a "staff meeting"

18   involving at least four people where they "would be discussing status, sales numbers for the

19   month to date, productivity…. And certainly one of those conversations would have been

20   around hiring."  Holland Dep. at 128:7-20.  Protection One argues that this was "the precise

21   opposite of a 'private' conversation… [it was] a public berating of plaintiff's subordinate

22

23   employees…. Plaintiff's volume alone removes the conversation from the definition of

24   'private.'"  Dkt. #29 at 23.  Protection One also argues that it did not authorize the recording.

25

26        In Response, Mr. Holland argues that the communication at issue here "occurred during

27   a workplace meeting between co-workers behind locked and security coded doors at Protection

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 17

1

2

One's offices" and "[i]t is clear that Holland expected this conversation to be private."  Dkt. #38 at 20.  Mr. Holland does not provide any evidence that Protection One authorized the recording.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

Whether a particular conversation is private under this statute is a question of law where the "facts are undisputed."  *State v. Kipp*, 179 Wn.2d 718, 726, 317 P.2d 1029 (2014).  Whether a communication is private is determined based on "a subjective intention [by the parties] that it be private," and whether "that expectation is reasonable."  *State v. Modica*, 164 Wn.2d 83, 87, 186 P.3d 1062 (2008) (citing *State v. Christensen*, 153 Wn.2d 186, 188, 102 P.3d 789 (2004)).  In making this determination, courts consider 1) "the duration and subject matter of the communication, 2) the location of the communication and the presence of potential third parties, and 3) the role of the nonconsenting party and his or her relationship to the consenting party."  *State v. Babcock*, 168 Wn. App. 598, 605, 279 P.3d 890 (2012) (citing *State v. Townsend*, 147 Wn.2d 666, 673–74, 57 P.3d 255 (2002)) (internal quotations omitted).  Communication in the workplace can be "private" within the meaning of the statute.  *Houser v. City of Redmond*, 91 Wn.2d 36, 37, 586 P.2d 482 (1978).

17

18

19

20

21

22

23

24

25

There is no question of fact that this recording is of Mr. Holland in a meeting with multiple employees at a work staff meeting.  There is no question of fact that Mr. Holland raised his voice in this meeting.  The Court thus finds that this was not a "private conversation" within the meaning of the statute.  Mr. Holland's claim fails on this ground alone.  The Court also finds that Mr. Holland can point to no evidence that this recording was made at the behest of Protection One.  Mr. Holland's claim against *this* Defendant would thus fail even if the recording had been of a private conversation.

26

27

28

//

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 18

**E. Plaintiff's Motion for Partial Summary Judgment**

Mr. Holland moves the Court for partial summary judgment, seeking determinations that he had a disability within the meaning of the ADA and WLAD and that he engaged in protected activity, and for dismissal of Protection One's affirmative defenses.   Dkt. #34.   However, because the Court has determined that Plaintiff's claims in their entirety are properly dismissed on summary judgment, Plaintiff's Motion for Partial Summary Judgment is denied as moot.

## IV.   CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1) Defendant's Motion for Summary Judgment (Dkt. #29) is GRANTED.  Plaintiff's claims in their entirety are DISMISSED.

2) Plaintiff's Motion for Partial Summary Judgment (Dkt. #34) is DENIED as MOOT.

3) This case is CLOSED.

DATED this 13th day of April 2016.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE